UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF DANVILLE,<br><br>Defendant. | Case No. 19-cv-01886-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE FIRST CLAIM OF THE COMPLAINT**<br><br>Re: Dkt. No. 28 |

Plaintiff GTE Mobilnet of California, L.P., d/b/a Verizon Wireless ("Plaintiff" or "Verizon") filed its motion for a partial summary judgment on the first claim of its complaint, which alleged that Defendant Town of Danville's ("Defendant" or "Town") denial of Verizon's application for a Land Use Permit (the "Application") was not based on substantial evidence, in violation of 47 U.S.C. § 332(c)(7)(B)(iii)). The parties have agreed that the Court's review of the claim addressed in this motion is limited to the administrative record and matters of which the Court takes judicial notice. See Dkt. No. 15, Joint CMS, ¶ 4, p. 5. The Court held a hearing on this motion on January 10, 2020. For the reasons stated below and at the hearing, the Court GRANTS Plaintiff's motion for a partial summary judgment on its first claim of the complaint.

The Court orders the Town to issue a permit for the approval of the facility at issue subject to all of the conditions that were part of the Planning Commissions' original approval on October 23, 2018.

**I.    FACTUAL BACKGROUND**

On November 10, 2017, Verizon filed an application with Defendant Town of Danville ("Defendant" or "Town") requesting a Land Use Permit (the "Application") to place a small wireless facility on an existing wooden utility pole on Camino Tassajara near the intersection of

Gatetree Drive (the "Project").  See Administrative Record Volume 1, pages 1-13 and Volume 4, page 958 ("AR 1:1-13, 4:958").  The Project consists of panel antennas concealed within a tall cylinder on top of a pole extension, which would be mounted to the top an existing 38.4 foot utility pole, increasing the height of the pole to about 50 feet.  See AR 4:958, 4:1013-1014.

In support of the Application, Verizon submitted a map depicting the Project, designated "SF Camino Tassajara 009," located within a 500-foot search radius specified by Verizon's RF (radio-frequency) Engineer.  See AR 1:210-11; Dkt. No. 27, Answer, ¶ 60.  According to the map, the Project must be within this search radius in order to avoid being too close to other proposed small cells.  See AR 1:143, 210-211; Dkt. No. 27, Answer, ¶ 60.  Verizon also submitted a report prepared by Hammett & Edison, Inc., an engineering firm, to evaluate the Project's compliance with FCC limits on radio-frequency ("RF") emissions (the "H&E Report").  See AR 1:8-12.  The H&E Report stated that maximum exposure to RF emissions from the Project would not exceed 0.23% of the FCC public limit at any publicly accessible location.  See AR 1:9-10.

After reviewing the Application, the staff report to the Town's Planning Commission concluded that the Project was the "least intrusive means" for Verizon to meet its service objective, "as the existing tree backdrop will substantially screen the facility from view of adjacent residences."  See AR 1:158-159.  The staff report also concluded that the Project is consistent with the Town's design guidelines for wireless facilities (the "Design Guidelines").  See AR 1:159.  The staff report recommended that the Planning Commission approve the Project, and proposed findings that it met all requirements for approval.  See AR 1: 159, 161-163.  At a public hearing on October 23, 2018, the Planning Commission followed its staff's recommendation and approved the Application, finding that it met all requirements for approval, including the wireless Ordinance and the Design Guidelines for wireless facilities.  See AR 1:270-271; 2:362-363, 385-389.

On November 2, 2018, the "Danville Citizens for Responsible Growth" ("DCRG") submitted an appeal.  See AR 2:390-397.  DCRG argued that a provision of the Ordinance discouraged wireless facilities within 250 feet of a residence and, according to DCRG, the Project location was less than 20 feet to the nearest residence.  See AR 2:390-392.  DCRG also alleged that there were alternative, feasible locations for the Project, the Project would have negative

2

impacts on aesthetics and property values, the Project was inconsistent with the Town's General Plan goal to promote a "small town atmosphere," there is no evidence of any coverage gap, and certain neighbors did not receive notice of the Planning Commission hearing. See AR 2:390-397.

On January 25, 2019, DCRG's counsel wrote to the Danville City Attorney claiming that there were three alternative sites near an East Bay Municipal Utilities District ("EBMUD") facility at the intersection of Camino Tassajara and Sycamore Valley Road (collectively, the "EBMUD Sites") that were both technically feasible and farther from residences than the Project. See AR 2:448-449. On January 30, 2019, Verizon submitted a rebuttal to DCRG's appeal, emphasizing compliance with the Town's Design Guidelines. See AR 2:458-484. Responding to the claim that the Project violated the residential setback, Verizon explained that there was no feasible alternative that met the setback, as confirmed by a detailed analysis of seven alternative locations, and that the EBMUD Sites were too far away to meet Verizon's coverage objective. See AR 2:460-461, 472-479. In addition, Verizon planned to install another small cell in that area to serve a distinct coverage objective.[1] See AR 2:472; 5:1687-1689.

Planning staff reviewed DCRG's arguments, prepared a report on the appeal, and still concluded that the Project met all requirements for approval and recommended that the Town Council uphold the Planning Commission's approval. See AR 2:401-406. DCRG responded in a letter dated February 4, 2019 arguing that Verizon had failed to consider the EBMUD Sites and that its plan for an additional small cell in that area was irrelevant. See AR 2:499-506.

The Council first considered the appeal at a hearing on February 5, 2019. Planning staff recommended that the Council uphold the Planning Commission's decision to approve the Project. See AR 3:645-649, 655-664. The Town's Principal Planner gave several reasons why the planning staff considered Verizon's proposed location "the least intrusive means" for Verizon to provide coverage including the fact that the Project was on an arterial street, "outside the

---

[1] The City Attorney confirmed that Verizon intended to file a permit application (AR 5:1593), but had to postpone its application because Verizon was still negotiating the necessary agreement with the Town to use its streetlights or traffic signal near the EBMUD facility. See AR 3:730:23-731:17, 4:1265:17-1266:7, 1291:12-1292:4, 6:1819. The City Attorney stated, "At this point we aren't supporting this . . . . For now, not an option we want to pursue." See AR 5:1591.

neighborhood," along an existing utility corridor, on an existing utility pole, and has a backdrop of mature redwood trees which substantially screen it from view. See AR 3:660:24 – 661:17.

There was extensive discussion at the hearing about whether the residential setbacks under 32-70.7(a) of the Ordinance applied to this project. The Planning staff and City Attorney repeatedly advised the Council that the residential setbacks under the Ordinance applied only to private land, not the public rights-of-way. See AR 3:659, 664-671, 860-862. The City Attorney explained, "if you put those distance parameters in as a blanket measure, that you couldn't be within 125 feet of – of a residence, for instance, you probably would effectively prohibit, you know, an antenna going in almost anywhere, because that's – that's the way the right-of-ways are – are set up." AR 3:862. The City Attorney reminded the Council that concerns about RF emissions are preempted, citing the H&E Report as evidence that the Project will comply with FCC limits on RF emissions. See AR 3:662-664. DCRG continued to argue that Verizon should relocate to one of the EBMUD Sites. See, e.g., AR 3:750-751. Verizon representatives explained that this was beyond the 1,000-foot to 1,500-foot coverage radius of the Project (AR 3:843, 845-846), and that Verizon planned to put an additional small cell facility in that area to meet a separate coverage objective. See AR 3:709, 711. Councilmembers asked Verizon if it had considered other utility poles near the Gatetree Baptist Church at 101 Gatetree Drive. See AR 3:680, 700-701, 836. Verizon explained that these poles were infeasible because of existing PG&E electrical equipment but agreed to explore the possibility of placing a new pole near the church. See AR 2:474-475, 3:649, 844-845. The Council continued the hearing to March 5, 2019, asking Verizon to provide additional information regarding its other planned facilities, explore the possibility of placing its facility closer to the church, and test its existing facilities to confirm their compliance with FCC limits on RF emissions. See AR 3:648-649. The Council did not ask for more information regarding the EBMUD Sites. See id.; Dkt. No. 27, Answer, ¶ 86.

Before the second Council hearing, Verizon submitted correspondence from PG&E confirming that it would not allow antennas to be placed on the poles near the church, but Verizon confirmed that it was feasible to install a new pole near the church. See AR 4:943-953. DCRG submitted a letter on February 26, 2019, arguing that the Project was not "the 'least intrusive'

location, as required by the U.S. Court of Appeals for the Ninth Circuit." See AR 4:981-1007. The Town's Planning staff prepared another report for the Council prior to the March 5, 2019, hearing that concluded that Verizon could not use the existing utility poles near the church, and that installing a new pole near the church would be more intrusive than the Project. See AR 4:958-959. The staff report also confirmed that there were no other locations for a new pole that would be substantially farther from the nearest residence than the Project and still meet Verizon Wireless's coverage objective. See AR 4:959. Staff again recommended that the Council approve the Project. See AR 4:960.

On March 5, 2019, the Town Council held a second public hearing on the appeal. See AR 4:954-957. Planning staff explained their findings that the Project met all the Town's requirements. See AR 4:1108-1111; see also Dkt. No. 27, Answer, ¶ 91. The Town Council then received presentations by Verizon Wireless, DCRG, and other project opponents. See AR 4:1096-1102. Planning staff and the City Attorney reiterated their interpretation that the setbacks located in 32-70.7(a) applied only to private land, while DCRG and project opponents continued to dispute this. See AR 4:1116-1117, 1250-1251. When discussing the setback, the Mayor stated: "it sounds like, if we are looking at our right-of-way, we're never going to hit 125 feet literally on any location with the exception of some medians on Camino Tassajara where we may get close." AR 4:1116-1119, 4:1308-1309. The Senior Planner responded: "that's why our ordinance does not require 125-foot setback on public right-of-way." See AR 4:1309. Verizon representatives argued that even if the residential setback under the Ordinance applied, the Project should be approved because there was no feasible alternative site that met the setback. See AR 4:1127. The Senior Planner confirmed that it was "not possible" for the Project to meet a 125-foot setback. See AR 4:1117. He explained that staff had walked up and down Camino Tassajara through the entire coverage area, and confirmed that "there's really no other utility poles or even locations for monopoles that could be put in that area that are really any further away from residences." AR 4:1108-1110.

DCRG and members of the public continued to argue that Verizon should relocate the facility to the vicinity of the EBMUD property. See, e.g., AR 4:1132. The Verizon RF Engineer

stated that small cells are designed to cover a compact area, with a coverage radius up to 1,500 feet (See AR 4:1201-1203), and the EBMUD Sites favored by DCRG were over 2,100 feet distant. See AR 2:460, 4:944, 1270. Verizon explained that the area near the EBMUD facility is not a substitute for the Project because Verizon needs to install an additional small cell (SF Camino Tassajara 008) in that area. See AR 4:1190-1191, 4:1283. Verizon's Counsel provided the Council with a map prepared by the Verizon Wireless RF Engineer that depicted the separate and distinct coverage areas of the Project (SF Camino Tassajara 009) and the small cell planned near the EBMUD facility (SF Camino Tassajara 008). See AR 4:1222-1225. The City Attorney advised the Council, "I think they've told you in fairly plain English . . . that they believe they need antennas at both those sites." AR 4:1250.

Many opponents focused on the alleged health effects of the Project's RF emissions. See, e.g., AR 4:1177, 1182, 1186. The City Attorney, however, confirmed that this was not a permissible basis for any decision by the Council, due to federal preemption. See AR 4:1245, 1303. Mr. Mathur, an engineer from Hammett & Edison, noted that based on "worst case, maximum power" assumptions, the maximum exposure to RF emissions from the Project at any publicly accessible location will be 430 times below the FCC limit. See AR 4:1193-1196. No Councilmember asked Mr. Mathur any questions about the proprietary software used to prepare the H&E Report. See AR 4:1193-1198; see also Dkt. No. 27, Answer, ¶ 98. Verizon also proposed a condition of approval that would require postconstruction testing — or actual measurements in the field — of RF emissions to confirm compliance. See AR 4:1199. The City Attorney confirmed that the Ordinance allows the City to require such testing and assured the Council that if a facility exceeds FCC limits, "you have the right to revoke that permit." AR 4:1246.

The Council closed the public hearing and Vice Mayor Stepper made a motion to approve the Application, arguing that the Project was the least intrusive means of providing an important service. See AR 4:1289. Her motion was not seconded. See AR 4:1329. Councilmember Arnerich favored denying the Application. See AR 4:1299-1301. The City Attorney stated, "the one thing that I can tell you is if you make a finding based on potential health impacts of RF that

— and I will tell you that my opinion is you would lose that — you would lose that lawsuit." See AR 4:1303. The Council discussed at some length the possibility of having Verizon relocate the Project to the EBMUD facility, despite Verizon's argument that the area was not a feasible alternative. See AR 4:1247:17-1250:3, 1257-1259, 1262:23-1271:5, 1290:17-21. Mayor Storer stated, "[b]ut what I'm hearing Verizon say is they're going to use [the EBMUD location] anyway and it's always a proposal on — in the future. They're looking at this site to cover a whole different area outside of the East Bay MUD site." See AR 4:1292. The City Attorney stated, "[t]hat is what they're telling you. That's the evidence that's in front of you in the record." See id. Despite this exchanged, a majority of the Councilmembers continued to favor the EBMUD Sites as less intrusive. See AR 4:1099-1100.

Eventually, the Council voted 4-1 to deny the Application based on two findings in a motion by Councilmember Arnerich. See AR 4:1101, 1346- 1349. Vice Mayor Stepper stated her disagreement for the record. See AR 4:1347. Following the hearing, the City Attorney prepared formal findings for denial, which the Council adopted in Resolution 6-2019 (the "Denial"). See AR 5:1409-1411; 6:1941-1944. The first finding was that Verizon Wireless had failed to demonstrate that either the Project or the alternative proposal for a new pole near the church was the "least intrusive means" to meet its coverage objective. See AR 5:1410. The basis for this finding was that the Verizon Wireless Network Map showed that it planned to place future small cell facilities between 2,000 and 3,000 feet apart, while Verizon had "testified" that the range of the Project's antennas was 1,500 feet. Id. The Council found that there was no explanation as to why the distances between the future small cell facilities exceed the 1,500 foot range maximum presented the Application and noted that "there are poles in [the EBMUD site] located within the public right of way that are further removed from residences than the proposed location and would be available to the applicant." Id. The second finding for denial was that Verizon had not demonstrated that the Project would comply with FCC limits on RF emissions. See AR 5:1410-1411. The basis for this finding was that Hammett & Edison had relied on "proprietary software" to determine that the Project's RF emissions would be far below FCC limits. Id. The Denial stated that "the Town Council finds that the use of a propriety software program developed by the

7

1 applicants engineer as the only basis to demonstrate compliance with FCC standards does not
2 constitute substantial evidence to establish actual compliance." Id.

## II. PROCEDURAL HISTORY

On September 5, 2019, Verizon filed this motion for partial summary judgment as to the first claim of its complaint. On October 2, 2019, the Town filed its opposition to Verizon's motion. On October 30, 2019, Verizon filed its reply in support of its motion. On October 31, 2019, DCRG filed a motion to intervene. The Court granted DCRG's motion on November 22, 2019. DCRG filed its opposition to Verizon's motion for partial summary judgment on December 6, 2019 and Verizon filed its reply on December 13, 2019.

## III. LEGAL STANDARD

A motion for partial summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a)-(d). A party may move for partial summary judgment on an entire claim or defense, or merely to dispose of only a "part of [a] claim or defense." Fed. R. Civ. Proc. 56(a). The moving party carries the initial burden of demonstrating to the court that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has carried its initial burden, the burden shifts to the nonmoving party, who must present evidence that there is indeed a genuine issue for trial. See Celotex, 477 U.S. at 323-24.

## IV. DISCUSSION

Verizon moves for partial summary judgment only on the first claim of its complaint. Verizon's first claim alleges that the Denial was not based on substantial evidence and, therefore, violated 47 U.S.C. § 332(c)(7)(B)(iii). Dkt. No. 1, Complaint, ¶ 119.

The Town's review of the Application is subject to the federal Telecommunications Act of 1996 ("TCA"), as well as state law and the Town's own regulations. The TCA generally preserves local zoning authority over the construction of wireless communications facilities, but pursuant to the TCA (a) any denial of an application to install or modify a wireless facility "shall be in writing and supported by substantial evidence contained in a written record" (47 U.S.C. § 332(c)(7)(B)(iii)); and (b) local governments may not regulate wireless facilities based on their RF

8

emissions, so long as those emissions are below the limits set by the FCC (47 U.S.C. § 332(c)(7)(B)(iv)). While the TCA does not define "substantial evidence," courts have held that that the applicable standard is the traditional standard of judicial review for agency decisions. Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates, 583 F.3d 716, 726 (9th Cir. 2009) (Sprint PCS); Metro PCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 723 (9th Cir. 2005) (MetroPCS).[2] The standard is deferential to the administrative agency. California RSA No. 4 v. Madera County, 332 F.Supp.2d 1291, 1303 (E.D. Cal. 2003). A municipality's valid decision under local law will be upheld under TCA's substantial evidence requirement where it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sprint PCS, 583 F.3d at 726. Denial of application must be "authorized by applicable local regulations and supported by a reasonable amount of evidence (i.e., more than a 'scintilla' but not necessarily a preponderance)." MetroPCS, 400 F.3d at 725. Courts may "'neither engage in [their] own fact-finding nor supplant the Town Board's reasonable determinations.'" MetroPCS, 400 F.3d 715, 725 (9th Cir. 2005) (quoting Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999).

The Town's Wireless Communication Facilities Ordinance ("Ordinance) is codified in Chapter 32-70 of the Danville Municipal Code and refers to the Wireless Communication Facilities Design Guidelines which clarifies the aesthetic standards and public safety goals of the Ordinance. See AR 1:171-206. According to the record, the Planning staff and the Planning Commission found that Project met all requirements for approval, including the wireless Ordinance and the Design Guidelines for wireless facilities. See AR 1:270-271; 2:362-363, 385-389.

### A. The Town's First Finding of the Denial was Not Based on Substantial Evidence

#### 1. The Town's application of the "Least Intrusive Means" test was not supported by the Ordinance

While on appeal there were extensive discussions regarding aesthetics and whether the

---

[2] MetroPCS was abrogated on other grounds in T-Mobile South, LLC v. City of Roswell, 574 U.S. 293 (2015).

9

Project violated the setback requirement contained in the Ordinance, the Town's denial does not appear to be explicitly based on these concerns. Instead, the Town's first finding of denial was that Plaintiff failed to demonstrate that either the Project or the proposed alternative "would constituent the least intrusive means of establishing a [wireless communication] facility in the desired coverage area." See AR 5:1410. Despite numerous references to the "least intrusive means" standard throughout the record, including discussions of this standard in Planning staff reports and at the numerous public hearings, the Ordinance does not require an applicant to consider "less intrusive" alternatives except in situations where the applicant is seeking a limited exception from other requirements of the Ordinance. The Town concedes that Danville Municipal Code sections 32-70.8(9)(1)(v), which allows the Town to grant a limited exception and expressly references "less intrusive wireless facilities" in the Ordinance, does not apply to Plaintiff's application. Dkt. No. 41, Town's Opposition at 5. The Town also concedes that the words "least intrusive means" are not expressly stated in the portions of the Ordinance that relate to Plaintiff's application. Id. The Town may not arbitrarily impose new criteria not in place at the time of Verizon's application. See AT&T Wireless Servs. of California LLC v. City of Carlsbad, 308 F. Supp. 2d 1148, 1163 (S.D. Cal. 2003); see also New Par v. City of Saginaw, 301 F.3d 390, 398 (6th Cir.2002) (denial of variance based on criteria not part of relevant city ordinance does not constitute substantial evidence); Group EMF, Inc. v. Coweta County, 131 F. Supp. 2d 1335, 1343 (N.D.Ga.2000) (county's denial of permit to build cell site due to applicant's failure to consider alternative cell sites was not supported by substantial evidence because the local ordinance imposed no such requirement); Virginia Metronet, Inc. v. Board of Supervisors, 984 F. Supp. 966, 974 n. 14 (E.D.Va.1998) ("In order be supported by substantial evidence, the proffered reasons must comport with the objective criteria in existence ... Governing bodies cannot simply arbitrarily invent new criteria in order to reject an application.")

The Town argues that it still properly applied the "least instructive means" standard used by the courts. Under 47 U.S.C. § 332(c)(7)(B)(i)(II), the Town's "regulation of the placement, construction, and modification of personal wireless service facilities" cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." The applicant bears the burden

10

of proving an effective prohibition, and that (1) there is a "significant gap" in coverage, and (2) the feasibility of alternative facilities or locations. Sprint PCS, 583 F.3d at 726. The Ninth Circuit has held that an applicant satisfies the second prong of the two-part test by showing that its proposed facilities are the "least intrusive means" for filling a coverage gap in light of the aesthetic or other values that the local authority seeks to serve. T-Mobile, 572 F.3d at 995; In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv., 33 F.C.C. Rcd. at 9101-02.

In Plaintiff's first claim of the complaint, however, Plaintiff is not alleging that the Town's denial prohibited or had the effect of prohibiting the provision of personal wireless services.[3] Instead, Plaintiff's first claim merely alleges that the Denial was not based on substantial evidence. In MetroPCS, the court held that "the substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*. See MetroPCS, 400 F.3d at 723–24 (emphasis in the original). The court further noted that it must take "applicable state and local regulations as we find them and evaluate the City decision's evidentiary support (or lack thereof) relative to those regulations. If the decision fails that test it, of course, is invalid even before the application of the TCA's federal standards." See id. Thus, the court would first consider whether the Denial was based on substantial evidence in the context of the Town's Ordinance and state law before applying the least intrusive standard to determine whether the Denial prohibited or had the effect of prohibiting the provision of personal wireless services.

Because the Ordinance did not require the Project constituent the least intrusive means of establishing a wireless communication facility in the desired coverage area, it was improper for the Town to base the Denial on this standard. According to the record, the Planning staff and the Planning Commission found that Project met all requirements for approval, including the wireless

---

[3] Plaintiff's second claim, which is not subject to this motion for partial summary judgment, alleges that the Denial prohibits or has the effect of prohibiting Verizon from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

11

Ordinance and the Design Guidelines for wireless facilities. See AR 1:270-271; 2:362-363, 385-389. The Town has not offered any rebuttal evidence that its first finding of the denial was based on substantial evidence that Verizon failed to satisfy one or more of the requirements imposed by the applicable statute or ordinance. Therefore, the Town's first finding of the denial was not based on substantial evidence.[4]

### 2. There is no evidence that the Denial was based on the setback requirement, concerns regarding aesthetics, or considerations regarding Verizon's ability to install equipment in the public rights-of-way

"The statutory phrase 'substantial evidence' is a 'term of art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court.'" T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293 (2015) (quoting United States v. Carlo Bianchi & Co., 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)). "By employing the term 'substantial evidence,' Congress thus invoked, among other things, our recognition that 'the orderly functioning of the process of [substantial-evidence] review requires that the grounds upon which the administrative agency acted be clearly disclosed,' and that 'courts cannot exercise their duty of [substantial-evidence] review unless they are advised of the considerations underlying the action under review.'" T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293 (2015) (quoting SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)). In the context of administrative law, "[t]he rule barring consideration of post hoc agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body." Indep. Min. Co. v. Babbitt, 105 F.3d 502, 511 (9th Cir. 1997); see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) (finding that Courts may not accept post hoc rationalization for agency action and an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); Nat'l Tower, LLC v. Plainville Zoning Bd. of

---

[4] DCRG argues that there is a material dispute regarding the feasibility of installing Verizon's wireless facility at an alternative site. Dkt. No 46, DCRG's Opposition at 3. Because the Court does not find that the "least intrusive means" standard applies, the Court need not reach this question regarding feasibility.

12

Appeals, 297 F.3d 14, 21 (1st Cir. 2002) (holding "[a] board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds.")

Although the phrase "least intrusive" does not appear in the sections of the Ordinance that apply to Verizon's application, DCRG argues that the Town Council made clear that the residential setback was intended to incorporate that standard.[5] Dkt. No. 46, DCRG's Opposition at 8. DCRG states that the Danville Wireless Ordinance ("Ordinance") sets forth development standards for installation of wireless equipment with the primary preference given to sites on private property or in the public right of way at least 250 feet away from residential dwellings and the least favorable locations are sites 125 feet away from any residential dwelling. AR 1:179-180; Ordinance Section 32-70.7(a). However, the Project is approximately 25 feet from a residence. AR 2:452. Furthermore, DCRG argues that courts have held that local jurisdictions may consider aesthetic in determining the placement of antennas. Dkt. No. 46, DCRG's Opposition at 6-7. DCRG argues that "[t]he simulation clearly shows that the existing utility pole is not visible due to trees on private property but that a 50-foot pole along a residential road is obtrusive and plainly visible to nearby residences." Dkt. No. 46, DCRG's Opposition at 6; AR 2:466. Alternatively, DCRG appears to argue that even if the least intrusive standard does not apply, the Project violates the Ordinance because the Ordinance requires a minimum 125-setback between the proposed location and the nearest residential dwelling. Dkt. No. 46, DCRG's Opposition at 9. DCRG also argues that the Project failed to comply with the requirement to provide a landscaping plan because the plan consists entirely of existing trees on private property. Dkt. No. 46, DCRG's Opposition at 10. Finally, DCRG argues that mobile broadband is not a regulated telecommunications service and only regulated telecommunications services have a right to install equipment in the public rights-of-way. Dkt. No. 46, DCRG's Opposition at 11.

Despite DCRG's appeal, the Denial did not contain any findings or discussions regarding

---

[5] Although DCRG argues that the Town Council made clear that the residential setback was intended to incorporate the least intrusive standard, it is unclear if the residential setback was intended to apply to applications such as Verizon's. See AR 3:664-671 (the Principal Planner states that the development standards located in Ordinance Section 32-70.7(a) do not apply to wireless facilities in the public right-of-way).

13

the residential setback, aesthetics, the landscaping plan, or Verizon's right to install equipment in the public rights-of-way. Instead, the Denial was merely based on the two findings articulated in the resolution regarding the least intrusive means test and Radio Frequency emissions. See AR 5:1409-1411. The Court will not consider these post hoc rationalizations that were not articulated by the Town Council.

### B. The Town's Second Finding of the Denial Was Not Based on Substantial Evidence

For a scientific technique to be reliable, there must be evidence in the record indicating that the methodology can be or has been tested. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1046 (9th Cir. 2014). The issue is whether an expert's methodology can be objectively challenged or whether it is instead simply a "subjective, conclusory approach that cannot reasonably be assessed for reliability." Id.

In support of its Application, Verizon submitted a report prepared by Hammett & Edison, Inc., an engineering firm, to evaluate the Project's compliance with FCC limits on radio-frequency ("RF") emissions (the "H&E Report"). See AR 1:8-12. Since the Project has not yet been built, in creating its report, Hammett & Edison relied on FCC approved formulas and used computer software to perform the necessary calculations. See AR 1:9-12. The FCC has acknowledged that organizations use software for modeling sites for compliance purposes. See RJN, Exh. A at 36, 59. Hammett & Edison has specialized in demonstrating compliance with the FCC's limits on RF emissions for many years. Its reports have been accepted as substantial evidence. See e.g., Calif. RSA No. 4 v. Madera County, 332 F. Supp. 2d 1291, 1311 (E.D. Cal. 2003).

Although Plaintiff provided the Town with the H&R report, the Town's second finding of denial was that Plaintiff failed "to adequately demonstrate that its proposed wireless communication facility will be in compliance with all applicable Federal Communication Commission regulations and guidelines for human exposure to Radio Frequency emissions."[6] See

---

[6] DCRG claims that there is a material factual dispute regarding whether the Town considered the health effects of RF Emissions in this Denial. Dkt. No 46, DCRG's Opposition at 2. Although the introduction to Verizon's motion claims that the Town "contrived" findings to deny the antenna on the basis that it had not proposed the least intrusive location in order "to placate" opponents who were concerned about the alleged health effects of radio-frequency emissions, Verizon's

14

AR 5:1410-1411.  The Town Council found that "the use of a propriety[sic] software program developed by the applicants engineer as the only basis to demonstrate compliance with FCC standards does not constitute substantial evidence to establish actual compliance."  Id.  However, the Town did not offer any evidence to contradict or cast doubt upon Hammett & Edison's methodology or its conclusions.

In its opposition, the Town contends that, although the H&E Report states that Figure 2 describes the calculation methodologies, "the table in Figure 2 does not include a calculation methodology or the actual calculations, but lists the frequency range and electromagnetic fields."  Dkt. No. 31, Town's Opposition at 13.  The citation for this contention actually refers to Figure 1, not Figure 2.  Figure 2 outlines the calculation methodology.  The Town also argues that "without a peer review of Hammett & Edison's calculations or an explanation of the calculations Hammett & Edison used to determine RF exposure, the Town could not ascertan the Council's reliability of the reported RF levels or whether the Project would be FCC-compliant."  Dkt. No. 31, Town's Opposition at 13.  However, the H&R Report does provide detailed information regarding the information provided by Verizon and Hammett & Edison's methodologies.  Despite having the opportunity to question the Hammett & Edison engineer at all three hearings, the Council did not ask questions regarding Hammett & Edison's proprietary software.  See Dkt. No. 27, Answer, ¶ 98, 109.  In addition, the Town could have commissioned either its own report or a peer review of the Hammett & Edison report as permitted under the Ordinance, (See § 32-70.6.e, at AR 1:178), but did not do so.

Although there were public commenters that were concerned that the RF exposures generated by Hammett & Edison's proprietary software were based on theoretical values of average RF exposure, (AR 4:1075, 4:1145), Verizon offered to conduct post-installation testing of actual RF emissions.  See AR 4:1099, 1199.  The City Attorney assured the Council that the Town could revoke the permit if emissions exceed FCC limits.  See AR 4:1246.  Since the Town had not presented any evidence to contradict or cast doubt on the H&E Report and testimony from the

motion is not based on an allegation that the Town considered the health effects of RF Emissions in this Denial.

15

1  Hammett & Edison engineer at the hearings, the substantial evidence does not support the
2  conclusion that Verizon failed to adequately demonstrate that its proposed wireless
3  communication facility will be in compliance with all applicable Federal Communication
4  Commission regulations and guidelines for human exposure to Radio Frequency emissions.

### C. Request for Judicial Notice

Verizon has requested that this Court take judicial notice of Exhibits B-F in Plaintiff's Request for Judicial Notice ("RJN"). These exhibits are described as "official acts of the City and County of San Francisco and the City of Berkeley, and technical reports submitted to and expressly relied on by those local governments to find that the projects in question would comply with the FCC limits on [RF] emissions." RJN at 3. The Town argues that the acts and documents of other jurisdictions are irrelevant and are not part of the administrative record. Dkt. No. 32, Town's Opposition to RJN at 3-5. The Town argues that extra-record evidence may only be considered when: an administrative record inadequately explains an agency action, the court may obtain affidavits or testimony; when the agency has relied on documents or materials outside the record; or, when "supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action." City and County of San Francisco v. United States, 930 F. Supp. 1348, 1355 (N.D. Cal. 1996). Verizon argues that these documents are relevant as a result of the Town's attack on the reliability of the H&R Report. However, Verizon does not clearly articulate the grounds by which the Court may rely on this extra-record evidence. Therefore, the Court denies Verizon's request for judicial notice as to Exhibits B-F.

### V. CONCLUSION

The Court GRANTS Plaintiff's motion for a partial summary judgment on its first claim of the complaint. The Court DENIES Plaintiff's request for judicial notice as to Exhibits B-F.

The Court orders the Town to issue a permit for the approval of the facility at issue subject to all of the conditions that were part of the Planning Commissions' original approval on October

16

23, 2018.

**IT IS SO ORDERED.**

Dated: January 14, 2020

_____
JOSEPH C. SPERO
United States Magistrate Judge